UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,        CRIMINAL CASE NO. 05-80355-1,2

v.

RICHARD BLANCHARD and        HONORABLE PAUL V. GADOLA
KAREN BLANCHARD,             U.S. DISTRICT JUDGE

                Defendants.
_____/

**I. Introduction**

Defendants Richard and Karen Blanchard, married in 1998, were the purported owners and officers of a family underground excavating business, R. Blanchard Construction, Inc., that they operated out of their home from 1998 through 2002. Defendants are now charged in a twenty-three count indictment, returned on April 12, 2005, alleging tax related improprieties. The case, originally assigned to the Honorable John Feikens of the Eastern District of Michigan, was administratively reassigned to this Court.

Counts 1-5 allege violations of 26 U.S.C. § 7201, which proscribes attempts to "evade or defeat" the duty to pay taxes; counts 6-20 are violations of 26 U.S.C. § 7202, which proscribes failure to "account for and pay over" withheld income and FICA taxes as an employer; and counts 21-23 allege violations of 18 U.S.C. § § 287 and 2, which proscribe making and causing the making of a false claim for tax refund.

Presently before the Court are Defendants' motions in limine. These motions relate to records of the following: (1) Defendants' leasing of two Cadillac automobiles; (2) Defendants'

gambling losses at the MGM Grand Casino-Detroit; (3) Defendant Richard Blanchard's purchase of firearms and a compact disc player from Bimm's Jewelry Company, Inc., a pawn shop; (4) Defendant Richard Blanchard's purchase of one handgun from CMP Distributors; (5) Defendant Richard Blanchard's application to become a volunteer police officer.

Each Defendant filed a motion in limine, or a joinder in the other Defendant's motion, as to each of the items listed. Defendant Richard Blanchard's motions essentially make the same argument for each item of evidence, arguing that the evidence is not relevant, is unfairly prejudicial, will confuse the issues, is misleading to the jury, and will cause undue delay at trial. The motions are, for the most part, boilerplate objections to the admission of the evidence. Defendant Karen Blanchard's motions argue that the records of the two Cadillac leases should not be admitted because a Cadillac is not a "luxury" item. She also agues that the remainder of the items of evidence are unduly prejudicial toward her because the records relate only to the purchases or activities of her husband, Richard Blanchard.

The Government argues that in order to prove a violation of 26 U.S.C. § 7202, the Government must prove that the failure to pay over the taxes was "willful." 26 U.S.C. § 7202. Accordingly, the Government seeks to present the evidence of the expenditures to show that, although there were sufficient funds to pay over the taxes due, Defendants chose to spend the money on non-essential or luxury items. Therefore, the Government argues, through their own choices, Defedants' willfully failed to satisfy the statutory tax obligations.

The Court heard oral arguments on these motions, as well as Defendants' then-pending

gambling losses at the MGM Grand Casino-Detroit; (3) Defendant Richard Blanchard's purchase of firearms and a compact disc player from Bimm's Jewelry Company, Inc., a pawn shop; (4) Defendant Richard Blanchard's purchase of one handgun from CMP Distributors; (5) Defendant Richard Blanchard's application to become a volunteer police officer.

Each Defendant filed a motion in limine, or a joinder in the other Defendant's motion, as to each of the items listed. Defendant Richard Blanchard's motions essentially make the same argument for each item of evidence, arguing that the evidence is not relevant, is unfairly prejudicial, will confuse the issues, is misleading to the jury, and will cause undue delay at trial. The motions are, for the most part, boilerplate objections to the admission of the evidence. Defendant Karen Blanchard's motions argue that the records of the two Cadillac leases should not be admitted because a Cadillac is not a "luxury" item. She also agues that the remainder of the items of evidence are unduly prejudicial toward her because the records relate only to the purchases or activities of her husband, Richard Blanchard.

The Government argues that in order to prove a violation of 26 U.S.C. § 7202, the Government must prove that the failure to pay over the taxes was "willful." 26 U.S.C. § 7202. Accordingly, the Government seeks to present the evidence of the expenditures to show that, although there were sufficient funds to pay over the taxes due, Defendants chose to spend the money on non-essential or luxury items. Therefore, the Government argues, through their own choices, Defedants' willfully failed to satisfy the statutory tax obligations.

The Court heard oral arguments on these motions, as well as Defendants' then-pending

motions to dismiss and motions to sever.[1] At the oral arguments, Defendant Karen Blanchard presented a new argument with respect to the evidentiary issues. Karen Blanchard argued that the tax obligations were not the obligations of Karen or Richard Blanchard personally, but instead, were the obligations of the corporation. Therefore, any evidence of *personal* expenditures by either Defendant are not relevant to whether the *corporation* had sufficient funds to meet the tax obligations. The Government countered, arguing that because there were no separate accounts for any of the funds, and because money that was coming into the business was being diverted and spent by Defendants, Defendants' expenditures are relevant as to the ability to satisfy the tax obligations and, therefore, to the element of willfulness.

At the close of the arguments, the parties were encouraged to file supplemental briefing on the issues raised at the hearing. Defendant Karen Blanchard filed several supplemental briefs. Karen Blanchard argues the lease of the Cadillac would be misleading to the jury because the jury should not be asked to decide whether the corporation should have leased a lower cost vehicle rather than a Cadillac vehicle. She argues that corporations frequently purchase "luxury cars" in order to project a successful image for the business. With respect to the gambling losses, the purchases from Bimm's Jewelry, and the application to become a volunteer police officer, Karen Blanchard argues that the records relate solely to personal expenditures by Richard Blanchard. Thus, they are not relevant to her in any way because they constitute acts by Richard and they fail to demonstrate that the corporation had the ability to satisfy the tax obligations. Richard Blanchard did not file any

---

[1] On July 3, 2007, the Court denied Defendants' motions to dismiss but granted Defendants' motions to sever the trial.

supplemental briefing on the issue, nor did the Government provide a response to Karen Blanchard's supplemental briefings.

**II. Legal Standard**

Stated generally, any evidence that has a tendency to make the existence of any fact that is of consequence in the determination of the action either more or less probable than it would be without the evidence, is relevant and, therefore, admissible. Fed. R. Evid. 401, 402. However, when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, possible misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, such evidence should be excluded. Fed. R. Evid. 403. Therefore, when considering whether any individual piece of evidence should be admitted, it is necessary to first determine the relevance of the evidence in light of the pending charges and then weigh the probative value against the possible prejudicial effect it may have on the jury.

Counts 6-20 charge Defendants with "willfully fail[ing] to truthfully account for and pay over to the Internal Revenue Service" quarterly withholding and FICA taxes, in violation of 26 U.S.C. § 7202. Section 7202 provides,

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony . . . .

26 U.S.C. § 7202. Therefore, according to the plain language of the statute, a violation of Section

7202 requires the Government to prove that there was: (1) a duty to collect, truthfully account for, and pay over a tax, (2) a failure to fulfill that duty, and (3) willfulness in that failure. In *United States v. Ausmus*, 774 F.2d 722 (6th Cir. 1985) the Sixth Circuit rejected an argument that a taxpayer could intentionally deplete a bank account by spending the money on luxuries, and then claim that because there were insufficient funds to pay over the taxes then due, the failure was not a willful one. *Ausmus*, 774 F.2d at 725 (finding that spending on "entertainment, new clothes, and support for his fiancee" are luxuries that do not negate the willfulness element of the crime). The Court rejected that argument, finding that a contrary position would allow "a recalcitrant taxpayer [to] spend his money as fast as he earns it and evade criminal liability while not paying taxes as long as his bank balance is zero when the taxpayer's taxes are due." *Id*. The Court of Appeals for the Ninth Circuit has examined the willfulness requirement and stated:

> [T]o establish willfulness the Government must establish beyond a reasonable doubt that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all the financial circumstances of the taxpayer.

*United States v. Poll*, 521 F.2d 329, 333 (9th Cir. 1975).

Therefore, there can be little doubt that the ability to satisfy– or the reason for being unable to satisfy– the tax obligation is a relevant consideration under 26 U.S.C. § 7202.

With the Federal Rules of Evidence in mind, the Court will first examine the general relevance of the evidence offered before turning to an individual assessment of the relevance and prejudice of each item.

5

## IV. Analysis

As stated above, the Court begins by considering the relevance of the evidence in question. If the evidence is relevant, the Court then considers whether the probative value of the evidence is substantially outweighed by the prejudicial effect it may have on the jury.

### 1. General Relevance

Generally speaking, it is readily apparent that a taxpayer's expenditure on non-necessary luxury items, spending funds that could have otherwise been used to satisfy outstanding tax obligations, is relevant to demonstrate the willfulness element of a violation of 26 U.S.C. § 7202. *See Poll*, 521 F.2d at 333. However, Defendant Karen Blanchard has argued that the expenditures the Government seeks to place into evidence in this case are not those of the taxpayer, the corporation, but instead are the personal expenditures of her husband. Accordingly, she argues, the expenditures are not probative of the corporation's ability to pay the taxes then due.

It is important to note that the arguments that have been presented to the Court regarding whether the items of evidence represent corporate or personal expenditures are vastly underdeveloped by the parties. The argument was raised only briefly at oral argument, and, after offering the opportunity to present supplemental briefing, only Karen Blanchard submitted any filings. The Government did not file any response.

With that in mind, the Court recognizes that under the theory set forth by the Government at the oral arguments, corporate funds were being commingled or diverted for various expenditures by Defendants. Although Defendant Karen Blanchard argues that the funds expended were the

6

personal funds of the Defendants, the issue as to the origin of the funds expended is a factual question that is properly left to the jury. Therefore, considering that the records may represent purchases made with commingled or diverted corporate funds, the records are relevant to the charges against both Richard and Karen Blanchard when considering whether there were sufficient funds to satisfy the tax obligations. *See, e.g., United States v. Evangelista*, 122 F.3d 112, 115 (2d Cir. 1997) (Defendants "repeatedly commingled personal and corporate funds, and then spent those monies on personal expenses and new businesses, thereby beggaring [the corporations] that owed the trust fund payments."). The Court also finds that presenting such an issue to the jury will not confuse the issues, cause substantial prejudice, or create undue delay. Accordingly, Defendants' objections to the evidence on the grounds of general relevance are rejected and any factual determination as to whether corporate funds were diverted or commingled is left for jury.

## 2. Individual Relevance and Prejudice

### A. Lease of Cadillac vehicles

The Government proposes to introduce records demonstrating that Defendants leased one Cadillac in 1999 and another in 2001 on behalf of the corporation. The Government maintains that the sum of money required to obtain a lease on these "luxury" automobiles demonstrates that Defendants spent funds that could have, and should have, been utilized to pay the tax obligations. *See Poll*, 521 F.2d 329. Defendants claim that the lease of a Cadillac is not luxury because the cost of the Cadillac leases, when compared to "normal" vehicles, "cannot be shown to be the cause of the [Defendants'] failure to pay their taxes." Def. Richard Blanchard's Br., p. 3 [docket entry #29].

7

Defendants assert that requiring the jury to determine whether leasing a Cadillac vehicle is a luxury will confuse and mislead the jury, and will cause undue delay.

The Court finds that the records are relevant as to whether there were sufficient funds to satisfy the tax obligations. Furthermore, Defendants' argument that the cost difference between the lease of a Cadillac and a "normal" vehicle could not be the source of their inability to pay over the taxes is an argument that should be addressed to the jury. A jury is aptly suited to consider such evidence and weigh its value. The Court finds that there is no legitimate concern that the records of the leases will confuse the issues or mislead the jury. Therefore, the Court will reject Defendants' objections to the records relating to the lease of the two Cadillac vehicles.

### B. Gambling Losses

The Government seeks to introduce records demonstrating that Defendants spent a considerable sum on gambling between the years 2000 and 2003 at the MGM Grand Casino. The Government asserts that gambling is a form of entertainment, a type of luxury. The Government also claims that a casino official will testify as to the reliability of the purported monetary figures.

Defendants argue that the evidence put forth by the Government as to the amount of money gambled by Defendants is misleading because the records reflect a recycling of the same money and do not represent the true amount the Defendants actually spent (*i.e.*, winnings were re-wagered, and therefore re-counted, but later turned into losses). Defendants also maintain that the evidence is unreliable, and that the evidence is highly prejudicial.

The Court recognizes that gambling at an established casino is a legal activity and, outside

8

of professional gamblers, a form of entertainment. As a form of entertainment, *see Ausmus*, 774 F.2d at 725, Defendants' gambling activities are probative of the fact that discretionary funds were used to provide entertainment instead of being used to satisfy tax obligations. Furthermore, as a legitimate and legal form of entertainment, the risk of prejudice is minimal. To the extent that Defendants object to the records because they lack foundation or are unreliable, the Court will overrule those objections without prejudice to renew the motions at trial. This will enable the Government to articulate the purpose for which it is offering these exhibits and provide an opportunity for establishing authentication, foundation, and reliability through witnesses at trial. Therefore, the Court will reject Defendants' objections to the records relating to Defendants gambling records.

### C. Purchases at Bimm's Jewelry Company, Inc.

The Government seeks to introduce records demonstrating that Richard Blanchard purchased three firearms in September 2001, for a total of $954.59, and purchased a compact disc player in September 2002 for $55.00. The Government again argues that these purchases demonstrate that there were sufficient funds to satisfy the tax obligations. Defendants argue that they will be substantially prejudiced by the jurors' views of gun ownership and by the fact that the items were purchased from Bimm's Jewelry Company, Inc., a pawn shop.

The Court finds that the records are relevant as to whether there were sufficient funds to satisfy the tax obligations. Furthermore, the Court finds that any possible prejudicial value of the records does not substantially outweigh the probative value. Fed. R. Evid. 403. Pawn shops are a

legitimate form of retail business and citizens generally enjoy the right to purchase and own firearms. There is no reason to believe that the records will confuse or mislead the jury. Therefore, the Court will reject Defendants' objections to the records relating to the purchases from Bimm's Jewelry Company, Inc.

### D. Purchase of Glock pistol from CMP Distributors

The Government proposes to introduce records demonstrating that Richard Blanchard purchased a "Glock 22" pistol, for $776.28, from C.M.P. Distributors on January 28, 2003. The Government again argues that this purchase demonstrates that there were sufficient funds to satisfy the tax obligations. Defendants argue that the records are not probative of any crime charged and, if admissible, presents a serious concern of undue prejudice. Defendants also maintain that this pistol purchase was not a voluntary expenditure, but instead, was necessary for Defendant Richard Blanchard's position as an auxiliary police officer. Defendants argue, that the jury will be misled or suffer from a confusion of the issues at trial.

The Government again argues that this purchase demonstrates that Defendants chose to expend funds that could have otherwise been used to meet the tax obligations, and hence the records bear on the willfulness element of the alleged crime.

The Court finds that the records are relevant as to whether there were sufficient funds to satisfy the tax obligations. Furthermore, the Court finds that any possible prejudicial value of the records does not substantially outweigh the probative value. Fed. R. Evid. 403. As discussed above, citizens generally enjoy the right to purchase and own firearms. There is no reason to

believe that the records will confuse or mislead the jury. Therefore, the Court will reject Defendants' objections to the records relating to the purchase of the Glock handgun from C.M.P. Distributors.

### E. Volunteer Police Officer Records

The Government proposes to introduce records relating to Defendant Richard Blanchard's application for membership in the Hazel Park Auxiliary Police Unit, a volunteer police unit. The Government argues that this evidence provides a context for Defendant Richard Blanchard's purchase of the Glock handgun, as part of his required equipment for the volunteer position. Defendants argue that the records related to Richard Blanchard's application to become a member of the Hazel Park Auxiliary Police Unit, as well as all related records including criminal history check, background information, personal references and information related to the Macomb County Concealed Weapons Licensing Board, are irrelevant to the charges brought against them. Defendants also assert that jurors may have strong views about both police officers and gun ownership that would present a substantial risk of prejudice. Finally, Defendants object to a portion of the oral board interview results which indicate that Defendant did not have the personal cleanliness necessary for the position when he appeared before the interviewing panel.

The Court finds that the information related to Defendant Richard Blanchard's cleanliness is information that is not relevant and which could be substantially prejudicial. Accordingly, the Court finds that the cleanliness information should be redacted. The remainder of the application records are relevant to the extent that they demonstrate that, although Defendant Richard Blanchard

11

has asserted that the Glock handgun was "necessary for his job as an auxiliary police officer," Def. Richard Blanchard's Br., p. 6 [docket entry #18], the purchase was actually related to his volunteer position. The Court finds that there is no reason to believe that the records will confuse or mislead the jury. Therefore, subject to redaction of the application records discussed above, the Court finds that the prejudicial value of the records does not substantially outweigh the probative value. Fed. R. Evid. 403. Accordingly, the Court will reject in part and grant in part Defendants' objections to the records relating to the records of Defendant Richard Blanchard's Hazel Park Auxiliary Police Unit application.

**V. Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**, subject to the above restrictions, and in a manner not inconsistent with this order, the Defendants' motions in limine [docket entries #17-20, 24, 29, 31-33 ] are **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated:   July 27, 2007            s/Paul V. Gadola
                                  HONORABLE PAUL V. GADOLA
                                  UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   July 27, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

           Richard L. Delonis; Joseph Falcone; Robert E. Forrest                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                          .

s/Ruth A. Brissaud

Ruth A. Brissaud, Case Manager

(810) 341-7845